UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

AMERICAN BATTERY TECHNOLOGY COMPANY, INC.,

Plaintiff,

v.

TYSADCO PARTNERS LLC,

Defendant.

Case No. 3:24-cv-00434-MMD-CLB

ORDER

## I. SUMMARY

Plaintiff American Battery Technology Company, Inc. ("ABTC") sued Defendant Tysadco Partners LLC ("Tysadco") for breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 26 ("Amended Complaint").) ABTC alleges that Tysadco failed to pay or acknowledge outstanding debts related to two purchase agreements of common stock. (*Id.* at 2-4.) Tysadco brings counterclaims against ABTC and Third-Party Defendant Jesse Deutsch, alleging that it entered into the agreements due to misrepresentations made by ABTC and Deutsch. (ECF No. 54 ("ACC").) Before the Court are ABTC's motion for summary judgment as to its own affirmative claims (ECF No. 58)[1], ABTC and Deutsch's joint motion for summary judgment as to Tysadco's counterclaims (ECF No. 59)[2], and Tysadco's motion for summary

---

[1]Tysadco responded (ECF No. 64) and ABTC replied (ECF No. 68). ABTC objects that Tysadco's response brief was filed one day late and should be disregarded (ECF No. 68 at 2& n.1), The Court overrules the objection.

[2]Tysadco responded (ECF Nos. 65, 70 (notice of errata), 72 (errata)). Because Tysadco filed the errata after the joint reply and response brief remains unchanged (ECF No. 70 at 2), the Court cites to the original filing (ECF No. 65). Tysadco also filed a supplement to its response (ECF No. 66 ("Supplemental Response")), and ABTC and Deutsch filed a joint reply (ECF No. 69). ABTC subsequently filed a motion to strike the Supplemental Response. (ECF No. 73.) While the Court agrees that the Supplemental Response is untimely and does not comply with LR 7-2(g), it denies the motion to strike

judgment as to ABTC's claims (ECF No. 60)[3]. For the reasons discussed herein, the Court will grant ABTC's motion for summary judgment (ECF No. 58) and ABTC and Deutsch's joint motion for summary judgment (ECF No. 59), and the Court denies Tysadco's motion for summary judgment (ECF No. 60).[4]

## II. RELEVANT BACKGROUND[5]

ABTC is a public company based in Reno, Nevada, operating in the lithium-ion battery industry. (ECF No. 58-1 at 6.) As a public company, it offers and sells securities to investors in public markets. (ECF No. 58-1.) Its current Chief Financial Officer is Jesse Deutsch and its Chief Executive Officer is Ryan Melsert. (ECF Nos. 58-6 at 9; 58-2 at 3-4.) Tysadco is a private firm that assists small public companies with raising capital using Steven "Stephen" Hart's[6] personal capital. (ECF Nos. 60-1 at 1-2; 58-3 at 11, 46.) Tysadco is not registered with the SEC as a broker or broker dealer. (ECF No. 60-1 at 2.) Hart has worked in financial markets for over 30 years in various capacities and is the sole proprietor of Tysadco. (ECF Nos. 58-3 at 8-9; 59-4.) He is "barred from association with any investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization" pursuant to a court order resulting from a SEC investigation into Hart's activities in fraudulent trading schemes. (ECF No. 58-5 at 4.)

ABTC and Tysadco began their business relationship in or around 2020, and Tysadco has been an investor in ABTC since at least March 15, 2021, pursuant to a

---

because the evidence Tysadco objects to in its Supplemental Response does not affect the Court's disposition of the motions and ABTC had the opportunity to address it in its reply brief.

[3]ABTC responded (ECF No. 63) and Tysadco replied (ECF No. 67).

[4]ABTC and Deutsch filed a joint motion to dismiss the amended counterclaims. (ECF No. 56.) The Court will deny the joint motion to dismiss as moot by this order.

[5]The following facts are undisputed unless otherwise noted.

[6]Hart changed the spelling of his first name for "business purposes" following a Securities Exchange Commission ("SEC") investigation, discussed *infra*. (ECF No. 58-3 at 46.)

prospectus ("Initial Prospectus") entered into between the two parties. (ECF Nos. 58-7 at 2; 60-1 at 2; 58-3 at 14.) On or around April 2, 2021, ABTC and Tysadco entered into a purchase agreement pursuant to the Initial Prospectus that established an equity line of credit for up to $75,000,000 of ABTC's common stock. (ECF No. 58-8.) The parties entered into subsequent purchase agreements for ABTC's stock and agreed to the same structure outlined in the prospectus dated June 26, 2023 ("First Supplemental Prospectus"), for 25,000,000 ATBC shares of common stock ("shares"). (ECF Nos. 58-7; 58 at 5; 64 at 3.)

After issuance of the First Supplemental Prospectus, Deutsch and Hart had various communications regarding Hart's frequent late payments. (ECF Nos. 58-6 at 10; 58-9.) In October 2023, Hart began complaining to Deutsch about the losses that Tysadco was incurring and sent self-created spreadsheets to show the alleged losses on the investments. (ECF Nos. 60-1 at 4; 58-10.) In one October 13, 2023, text exchange between Deutsch and Hart, Deutsch stated to Hart in a text message: "Thinking about what you said. We will cover the losses later. [Y]ou need to send me the contracted amounts of $2.5[.]" (ECF No. 58-9 at 4.)[7]

The parties renegotiated terms resulting in a December prospectus supplement ("Second Prospectus Supplement"), and eventually, entered into additional purchase agreements in March 2024 pursuant to the terms of the Second Prospectus Supplement: (1) a March 21, 2024 Purchase Agreement for 521,105 shares for $1,000,000 (ECF No.

[7]The parties dispute the meaning of "cover" in this text message. Tysadco cites to a declaration from Hart, who states that Deutsch "orally assured [him] that ABTC would 'cover' the losses on the trades that [Tysadco] was incurring pursuant to the agreements" and that this text message confirms that arrangement. (ECF No. 60-1 at 4.) ABTC cites to a declaration from Deutsch, who states that he meant that they would discuss the losses later. (ECF No. 58-6 at 11.) The Court does not address the parties differing interpretations of "cover" because such dispute is immaterial in light of the Court's rulings here.

Tysadco also alleges, and ABTC disputes, that in October 2023, Deutsch orally represented that "[Tysadco] would be 'made whole' by ABTC at the conclusion of the parties' business relationship." (ECF No. 60-1 at 4.) The only evidence in the record as to this exchange is Hart's declaration.

58-13); (2) a March 31, 2024 Purchase Agreement for 320,273 shares for $500,000 (ECF No. 58-14) (collectively, "Purchase Agreements"). The Purchase Agreements contained an express integration clause, stating that the agreements "supersede all other prior oral or written agreements" and that the agreements "contain the entire understanding of the parties." (ECF Nos. 59-14 at 16; 59-15 at 16.)

ABTC issued the shares pursuant to the Purchase Agreements. (ECF Nos. 58-3 at 29-30; 58-15 at 3-4.) Tysadco did not pay the full amounts due under the Purchase Agreements: it paid only a portion due under the March 21, 2024 agreement and made no payment toward the March 31, 2024 agreement. (ECF No. 58-15 at 4.)

## III. DISCUSSION

To avoid repetition, the Court will address the motions as they pertain to each claim and counterclaim, while bearing in mind the parties' burdens on summary judgment. *See* Fed. R. Civ. P. 56 (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (a court must view all facts and draws all inferences in the light most favorable to the nonmoving party). The Court first evaluates the motions with respect to the contract-based claims. The Court next turns to Tysadco's counterclaims for fraudulent inducement, negligent misrepresentation, and violation of Nevada securities law.

### A. Breach of Contract Claim

The parties each move for summary judgment on ABTC's breach of contract claim. (ECF Nos. 58 at 14-18; 60 at 9-11.) ABTC contends that there is no genuine dispute of material fact as to its claim. (ECF No. 14-17.)[8] The Court agrees with ABTC.

[8]Tysadco argues in its response brief and its own motion for summary judgment that the contract is unenforceable as illegal and voidable under Section 29(b) of the Securities and Exchange Act (the "Exchange Act"). (ECF Nos. 60 at 9-11; 64 at 9-11.) Illegality is an affirmative defense and goes to the enforceability, not formation, of a contract. *See infra*. Accordingly, the Court will address this argument below.

To prevail on a breach of contract claim under Nevada law, the plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405 (1865)). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). A breach of contract is the material failure to perform a duty that arises under the contract. *See State Dep't of Transportation v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 402 P.3d 677, 682 (Nev. 2017).

Here, there is no genuine dispute that Tysadco breached the Purchase Agreements between ABTC and Tysadco by failing to pay for the shares. Indeed, Tysadco entered into the Purchase Agreements, pursuant to which it agreed to "pay to [ABTC] 10% of the Purchase Price at Closing and 90% of the Purchase Price no later than 14 days after Closing." (ECF Nos. 58-13 at 4; 58-14 at 4.) On or about March 22, 2024, Tysadco was issued 521,105 shares pursuant to the March 21, 2024 Purchase Agreement. (ECF No. 58-15 at 3-4.) On or about April 1, 2024, Tysadco was issued 320,273 shares pursuant to the March 31, 2024 Purchase Agreement. (*Id.* at 4.) Hart confirmed in his deposition testimony that Tysadco received all of the shares under the Purchase Agreements and that Tysadco did not pay the full amount due under the agreements. (ECF No. 58-3 at 17, 26-27.)

As to damages, here too, there is no genuine dispute as to any material fact. It is undisputed that Tysadco paid nothing toward the March 31, 2024 agreement. (ECF No. 58-15 at 4.) As to the March 21, 2024 agreement, ABTC offers bank records and payment summaries showing that Tysadco paid only $63,607.20 toward it. (ECF Nos. 58-18, 58-19.) Tysadco argues that a genuine dispute of material fact exists because it paid $164,554 toward the March 21, 2024 agreement[9]. (ECF No. 64 at 12.) In support of this

[9]Tysadco additionally argues that the Amended Complaint alleged that it paid $84,193.50 under the March 21, 2024 purchase agreement, so ABTC cannot now claim

argument, Tysadco cites only to Hart's declaration[10], which states that "Tysadco Partners paid a total of $164,545 of the purchase price" via a series of wire transfers. (*Id.* at 166.)[11] However, the declaration does not include or cite to any evidence showing these wire transfer payments, though banking transaction receipts or records are easily obtainable. The Court finds Tysadco's failure to provide any documentation of these transfers particularly notable, given Hart's apparent recordkeeping. (ECF No. 72 (errata) at 104-107 (Hart's spreadsheet of all resales of ABTC stock).) Moreover, as ABTC correctly points out, Tysadco has pointed to no other evidence in the record to support its claim: "[n]o wire confirmation, no bank confirmation, no canceled check, and no other competent proof." (ECF No. 68 at 8.) The Court finds that ABTC as the moving party met its initial burden of production as to damages by providing banking records and summaries, and Tysadco has failed to produce any evidence to create a genuine issue of material fact to preclude summary judgment. *See Kaiser Cement*, 793 F.2d at 1103-04. The Court finds that ABTC has established that the breach caused damage. ABTC was entitled to $1,500,000 under the Purchase Agreements, but it only received $63,607.20, resulting in a balance of $1,436,392.80. (ECF Nos. 58-18; 58-19; 58-21 at 3.)

**1. Illegality Defense**

Tysadco raises the affirmative defense of illegality. It argues that the Purchase Agreements are unenforceable as illegal because ABTC engaged Tysadco as an

---

in its motion that Tysadco only paid $63,607.20. (ECF No. 64 at 12.) ABTC counters that the amount alleged in the Amended Complaint was based on then-available information, whereas the amount it seeks in the motion was revised after discovery and further investigation, and is supported by the evidentiary record. The Court agrees with ABTC.

[10]Indeed, courts in the Ninth Circuit have refused to find a genuine issue of material fact where the only evidence presented is uncorroborated and self-serving. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (collecting cases). Thus, Hart's declaration stating the amount paid, without more, cannot create a genuine issue of fact as to the balance owed under the Purchasing Agreements.

[11]This payment amount also appears in Tysadco's responses to ABTC's Requests for Admission, though Tysadco does not cite it in its response. (ECF No. 58-15 at 4.) ABTC sought an admission that Tysadco paid ABTC $84,193.50 toward the March 21, 2024 purchase agreement. Tysadco responded: "Denied. Defendant paid $164,545 to ABTC. . . ." (*Id.*)

unregistered broker-dealer in violation of under section 15(a) of the Exchange Act and is therefore voidable pursuant to section 29(b) of the Exchange Act and unenforceable as illegal. (ECF No. 64 at 9-11.) ABTC counters that the Purchase Agreements are fully lawful and enforceable because the agreements require no broker or dealer activity, Tysadco was an individual investor or trader, and the object of the contracts is not illegal. (ECF Nos. 68 at 3-7; 63 at 6-12.) The Court agrees with ABTC.

Under section 15(a) of the Exchange Act, it is unlawful for any "broker" or "dealer" to trade securities without registering with the Securities and Exchange Commission. 15 U.S.C. § 78o(a)(1); *U.S. Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 842 (9th Cir. 2022). A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." *U.S. Sec.*, 50 F.4th at 842-43 (quoting 15 U.S.C. § 78c(a)(4)(A) and discussing the *Hansen* broker factors). The Exchange Act defines "dealer" as "any person engaged in the business of buying and selling securities . . . for such person's own account," but excludes "a person who buys or sells securities . . . for such person's own account" "but not as a part of a regular business." 15 U.S.C. § 78c(a)(5)(A)-(B); *see also Discovery Growth Fund, LLC v. Beyond Commerce, Inc.*, 561 F. Supp. 3d 1035, 1040-41 (D. Nev. 2021) ("A person who buys and sells securities for his own account in the capacity of a trader or individual investor is generally not considered to be engaged in the business of buying and selling securities and consequently, would not be deemed a dealer.") (citation modified). Contracts made in violation of provisions of the Exchange Act are voidable as to the rights of a violator. *See* 15 U.S.C. § 78cc(b). Moreover, contracts with an illegal purpose are against public policy and unenforceable. *See Western Cab Co. v. Kellar*, 523 P.2d 842, 245 (Nev. 1974).

There is no genuine dispute of material fact as to whether Tysadco was a broker-dealer for the purposes of section 15(a). Hart testified in his deposition: "I'm not a broker. I don't raise money for other issuers." (ECF No. 58-3 at 47.) Nor is Hart permitted to associate with any brokers or dealers, pursuant to restrictions of a prior court order. (ECF No. 58-5.) Moreover, Tysadco does not present any facts to support that it was a broker

or dealer—for example, that it was employee of ABTC, received transaction-based income such as commissions rather than a salary, or advertised for clients. *See U.S. Securities*, 50 F.4th at 840; *Discover Growth*, 561 F.Supp.3d at 1041. Indeed, the Purchase Agreements provided that Tysadco could receive no brokerage fees or commissions from transactions. (ECF Nos. 58-13 at 11-12; 58-14 at 11-12 ("No brokerage or finder's fees or commissions are or will be payable by [ABTC] to any broker, financial advisor or consultant. . ..").) The Purchase Agreements also provide that "[Tysadco] is acquiring the Securities as principal for its own account and not with a view to or for distributing or reselling such Securities." (*Id.* at 5.)

In other words, the undisputed facts indicate that Tysadco is an individual trader or investor that individually purchased and sold ABTC stock on its own. *See Discover Growth*, 561 F.Supp.3d at 1041 ("[I]nvestors like Plaintiff buy securities directly from issuers like Defendant, often at a substantial discount, and then resell them into the public market for a variable but potentially large profit."). Hart testified that he was the only one who could decide to sell shares if Tysadco wanted to sell its shares. (ECF No. 63-5 at 7.) He further testified that he cannot manage other people's money, only his own, and can invest in issuers like ABTC. (ECF No. 58-3 at 11, 47.)

Moreover, even if Tysadco had acted as a broker or dealer, that would not be grounds to rescind the Purchase Agreements as unlawful under Section 29(b). The Court finds instructive a recent Second Circuit Court of Appeals case analyzing this exact issue, *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405 (2d Cir. 2025), which ABTC cites in its reply brief. In *Xeriant*, the plaintiff sought recission of a securities purchase agreement under Section 29(b) of the Exchange Act, arguing that the defendant hedge fund was not a registered dealer as required under Section 15(a) of the Exchange Act. *Id.* at 414-16. The court explained that the key inquiry is whether the contract, when formed or performed, required the defendant to transact securities as an unregistered dealer. Where the terms of the contract did not require registration as a dealer, the contract was not an illegal contract and therefore not rescindable under Section 29(b). *Id.* at 416. Here, as

ABTC correctly argues, the Purchase Agreements did not require unlawful conduct. (ECF No. 68 at 7.) The Court agrees with ABTC that Tysadco essentially asks the Court to render lawful purchase agreements into unlawful broker-dealer agreements. (*Id.* at 5.) Tysadco's state law illegality defense fails for the same reason.

**2. Conclusion**

In sum, the Court finds that Tysandco breached the Purchase Agreements and thus damaged ABTC. Moreover, the Court finds that there is no genuine dispute of material fact as to the legality of the Purchase Agreements. Accordingly, the Court will grant ABTC's motion for summary judgment as to its breach of contract claim.[12]

**B. Fraudulent Inducement Counterclaim**

ABTC and Deutsch contend that Tysadco's fraudulent inducement counterclaim fails because it effectively attempts to rewrite the written Purchase Agreements and Tysadco cannot show justifiable reliance.[13] (ECF No. 59 at 14-22.) Tysadco argues in response that a genuine dispute exists as to justifiable reliance and that the integration clause in the Purchase Agreements is not a bar to its claims. (ECF No. 65 at 10-13.)[14] The Court agrees with ABTC and Deutsch.

To prevail on a claim of fraudulent inducement under Nevada law, a plaintiff must prove "(1) a false representation made by the defendants; (2) the defendants' 'knowledge or belief that the representation was false,' (3) the defendants' intention to induce the plaintiff to consent to the contract's formation; (4) the plaintiff's justifiable reliance upon the misrepresentation, and (5) damage resulting from such reliance." *Matsugishi v. Chen*,

---

[12]ABTC pleads, in the alternative, a claim for breach of the implied covenant of good faith and fair dealing. The Court need not address this claim.

[13]ABTC and Deutsch raise other arguments that the Court need not address to resolve the motions.

[14]Tysandco also briefly argues in its response to ABTC's motion for summary judgment that there is a dispute of material fact as to whether it was fraudulently induced into the Purchase Agreements in response to ABTC's motion. (ECF No. 64 at 11-12.)

790 F. Supp. 3d 1007, 1017-18 (D. Nev. 2025) (quoting *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004)).

Here, Tysadco has failed to demonstrate any genuine issue of material fact exists as to justifiable reliance. The Purchase Agreements contained an integration clause that expressly disclaims reliance on "any representations or statements, written or oral" other than what is contained in them. (ECF Nos. 59-14 at 16; 59-15 at 16.) Given this integration clause, Tysadco did not reasonably rely on Deutsch's October 2023 text stating that he would "cover the losses later." *See Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 381 (Nev. 2012) (A "purported inducement cannot be something that conflicts with the [contract]'s express terms, as the terms of the contract are the embodiment of *all* oral negotiations and stipulations.") The same is true of Deutsch's alleged October 2023 promise that ABTC would "make whole" Tysadco, which is only supported by Hart's declaration.[15]

Tysadco argues that the Court must determine whether the writing is intended to be the final expression of the parties' agreement, citing to *Sierra Diesel Injection Serv. v. Burroughs Corp.*, 651 F. Supp. 1371 (D. Nev. 1987). But this case is unavailing. In *Sierra Diesel*, the plaintiff claimed that defendant made oral warranties and that the defendant had taken numerous efforts and affirmative actions to comply with these warranties. *Id.* at 1377. But, here, Tysadco can point to nothing other than Deutsch's text message and Hart's declaration that there was an oral agreement to make it whole. This is not enough to create a genuine dispute of material fact as to whether there was justifiable reliance, particularly where, as here, the Purchase Agreements contained an integration clause, and the alleged misrepresentation would greatly conflict with the express terms of these Agreements. *See Road & Highway Builders*, 284 at 382.

Tysadco repeatedly underscores that Hart was a "sophisticated investor" and notes that this is a fact that "cuts both ways." (ECF No. 65 at 2, 11, 12.) Tysadco asks the

[15]*See Villiarimo*, 281 F.3d at 1061 (9th Cir. 2002).

Court to consider "why would a sophisticated investor repeatedly enter into agreements to purchase and resell securities that caused it to ultimately suffer a seven figure loss *unless it had a guarantee from ABTC that those losses would be made up to it in the future*[?]" (*Id.* at 12.) Indeed, reviewing the facts both ways, the Court cannot find that a sophisticated investor would reasonably rely on a months-old extracontractual oral representation that would entirely change the meaning of the express written contract. In the absence of other evidence, the Court cannot find any genuine issue of material fact as to justifiable reliance.

Accordingly, the Court will grant the joint motion for summary judgment as to Tysadco's crossclaim for fraudulent inducement.

**C. Negligent Misrepresentation Counterclaim**

ABTC and Deutsch argue that they are entitled to summary judgment on Tysadco's negligent misrepresentation counterclaim because Tysadco cannot demonstrate justifiable reliance on the alleged misrepresentations. (ECF No. 59 at 22-23.) Tysadco counters that genuine disputes of material fact exist as to its claim. (ECF No. 65 at 13-14.) The Court agrees with ABTC and Deutsch.

Nevada has adopted the Restatement (Second) of Torts § 552 for negligent misrepresentation claims. *See Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 795 & n.4 (Nev. 2004). It provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977).

As discussed above, there is no genuine issue of material fact as to whether Tysadco justifiably relied upon Deutsch's representation that ABTC would "cover the losses later" and "make whole" Tysadco for the losses it incurred from selling ABTC shares. The undisputed facts show that ABTC and Tysadco entered into valid Purchase

Agreements that contained an integration clause expressly disclaiming any written or oral statements not contained therein. No genuine dispute of material fact exists as to whether Tysadco justifiably relied on these alleged statements—any reliance is patently unreasonable.

Accordingly, the Court will grant the joint motion for summary judgment as to Tysadco's crossclaim for negligent misrepresentation.

**D. Violation of NRS § 90.570(2) Counterclaim**

ABTC and Deutsch claim that they are entitled to summary judgment on Tysadco's claim arising from Nevada state securities law because Tysadco has produced no evidence that ABTC or Deutsch made a materially false statement or omission in connection with the sale or purchase of a security. (ECF No. 59 at 23-24.) Tysadco maintains that this argument is "ludicrous in light of the fact that Deutsch made the misrepresentations to fraudulently induce [Tysadco] to enter into agreements." (ECF No. 65 at 14-15.) The Court again agrees with ABTC and Deutsch.

Under the Nevada Uniform Securities Act, a person shall not "[m]ake an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements not misleading" in connection with the offer to sell, sale, offer to purchase, or purchase a security. NRS § 90.570(2). NRS § 90.660 provides civil liability for those who violate NRS § 90.570, but only if the seller did not know of the untrue statement or omission and the purchaser did not know that the statement was untrue or that there was an omission. *See* NRS § 90.660(1)-(2).

The Court finds that there is no genuine issue of material fact as to whether Deutsch made a materially false statement in connection with the sale or purchase of a security. Rather, the undisputed facts show that on October 13, 2023, Deutsch sent Hart a text message that said, "We will cover the losses later. [Y]ou need to send me the contracted amounts $2.5[.]" (ECF No. 59-10 at 4.) Over five months later, on or around March 21, 2024 and March 31, 2024, ABTC and Tysadco entered into the relevant Purchase Agreements for ABTC stock. Leaving aside whether Deutsch's text message

was a materially false statement and whether the alleged oral promise to make Tysadco whole occurred, Tysadco fails to provide any evidence that such statements were made in connection with the sale of securities that occurred five months later. Indeed, as discussed above, Tysadco cannot establish this, particularly given the integration clause which expressly disclaims any written or oral statements or representations.

Tysadco, in its response brief, points to the statutory definition of "offer to sell" to argue that Deutsch's statements to Hart fall under the scope of NRS § 90.570(2). (ECF No. 65 at 15.) This argument is unpersuasive. An "offer to sell" includes "every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value." NRS § 90.280(1). Even under Tysadco's interpretation of "cover the losses later," this statement was made five months before the parties entered into the Purchase Agreements. The undisputed facts simply do not show that such a statement occurred "in connection" with the offer to sell.

Accordingly, the Court will grant the joint motion for summary judgment as to Tysadco's Nevada Uniform Securities Act claim.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that ABTC's motion for summary judgment (ECF No. 58) is granted. ABTC is entitled to summary judgment on its breach of contract claim, entitling it to damages in the amount of $1,436,392.80.

It is further ordered that ABTC and Deutsch's joint motion for summary judgment on Tysadco's counterclaims and third-party claims (ECF No. 59) is granted.

It is further ordered that Tysadco's motion for summary judgment, or in the alternative, for summary adjudication (ECF No. 60), is denied.

It is further ordered that ABTC's motion to strike Tysadco's supplemental response (ECF No. 73) is denied.

It is further ordered that ABTC and Deutsch's joint motion to dismiss the amended counterclaims (ECF No. 56) is denied as moot.

The Clerk of Court is kindly directed to enter judgment in favor of Plaintiff ABTC on its claims and in favor of Counter-Defendant ABTC and Third-Party Defendant Deutsch on Tysadco's counterclaims in accordance with this order and close this case.

DATED THIS 4th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE